**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

 JOHN LOIACONO, individually and on behalf of
similarly situated individuals,

Plaintiffs,

v.

ALLIED PARTNERS MANAGEMENT LLC, 200 EAST
79TH STREET LLC, REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC., SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU) LOCAL 32BJ, AND
DOES 1-20

Defendants

| |
|---|
| **COMPLAINT (Proposed Class)** |
| **AND JURY DEMAND** |
| INDEX:_____ |

_____

### INTRODUCTION

1.  This is a civil rights wrongful discharge action brought by Plaintiff John Loiacono in his individual capacity and on behalf of any other class of private sector workers (collectively Plaintiff) pursuant to 29 U.S.C. §660 Subsection 11(c)(1)&(2) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the discriminatory discharge of Plaintiff by Defendants Allied Partners Management LLC and 200 East 79th Street LLC (hereinafter collectively "Allied200") for Plaintiff's exercising his right to object to taking the Covid-19 vaccine/immunization on religious grounds, which is a First Amendment Free Exercise right protected under 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2.  Alternatively, this action is also brought pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act against Defendants "Allied200" and Realty Advisory Board on Labor Relations, Inc. and

Service Employees International Union (SEIU) Local 32BJ (collectively "Defendants") as private sector employers who conspired and/or agreed under color of government municipal law passed by the City of New York to deprive Plaintiff of his fundamental right to refuse the Covid-19 vaccine pursuant to the OSH Act, pursuant to the First Amendment Free Exercise clause and the right 14th Amendment substantive due process fundamental right choose chose his own medical treatment as declared by the U.S. Supreme Court in the Jacobson v. Massachusetts, 197 U.S. 11, 26 (1905)[1] and in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990).[2]

3.  This action is also brought pursuant to Section 301 of the National Labor Relations Act, 29 USC §185 for the SEIU Local 32BJ's failure to represent Plaintiff by entering into an agreement with Co-Defendants that bargained away Plaintiffs Constitutional First Amendment Free Exercise Right that is also protected by the OSH Act and 14th Amendment Substantive Due Process right and said bargained agreement is not an authorized bargainable matter by the SEIU Local 32BJ.

4.  Finally, this action also includes a claim for common law fraud against Defendants on behalf of similarly situated employees of Defendants who complied with Defendants mandate to be injected with a Covid-19 vaccine and who suffered injury due to their reliance on Defendants fraudulent representation that taking the Covid-19 vaccine was "necessary" to prevent the spread, and transmission of the Covid-19 airborne various in the workplace.

5.  The wrongful termination was caused in part by the City of New York ("City") issuance of the December 13, 2021 Covid-19 Vaccine Order ("Covid Vaccine Orders" or "Vaccine Orders") issued through the New York City Department of Health and Mental Hygiene ("NYCDOH")

[1] Held: That every person has "the inherent right of every freeman to care for his own body and health in such way as to him seems best…. liberty secured by the Constitution of the United States to every person within its jurisdiction."
[2] Cruzon: held –("we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)

former Commissioner Dave. A Chokshi, MD and enforced by previous NYC May Bill de Blasio and further enforced by the current City Mayor Eric Adams and Commissioner Ashwin Vasan mandating Plaintiffs to provide proof of having received the Covid-19 vaccine enforced by City private section employer Defendants, which mandate was in violation of the OSH Act Section 18 express preemption clause which prohibits municipalities governed by an OSHA Plan from enacting unauthorized workplace safety methods that do not meet existing OSH Act minimum safety standards  and which precludes under OSH Act employers from refusing automatic vaccine/immunization exemptions based on religious grounds. see OSH Act 29 U.S.C. §667 Section 18(a)  and 20 U.S.C. §660 Section 11(c)(1)

6. Plaintiffs also seek punitive damages against their specific employer Defendant, specifically against board members of Defendants, including but not limited to Howard Rothschild, Hector Figueroa, Eric Hadar and Jaclyn Pagnotta, and Alex Freedman, for their willful and/or reckless disregard of the rights of Plaintiff Loiacono and those similarly situated who refused the Covid-19 vaccine medical treatment as outlined above and who have the right to be free from "quid pro quo" religious harassment under the NYCHRL and alternatively Title VII.  See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994) (Held, in summary that punitive damages are available under the OSH Act)  Defendants collectively agreed and conspired to pressure Plaintiffs to take the illegal Covid-19 vaccine by threatening their jobs, telling them they don't care about the health of the general public for refusing the Covid-19 vaccine, and ultimately collectively agreeing to terminate their respective Plaintiffs for refusing the Covid-19 vaccine and Defendants have agreed to maintain a policy to not hire new employees who are unable to provide proof of Covid-19 vaccination.

## JURISDICTION AND VENUE

### a. Jurisdiction

7. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccine Orders, as well as original jurisdiction pursuant to Section 11(c)(2)[3] of the OSH Act (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief" for the wrongful discharge of employees in violation of OSH Act Section 11(c)(1), which includes wrongful discharge of an employee who exercises their right to refuse immunization/vaccines, medical treatments or medial exams on religious grounds pursuant to Section 20(a)(5) of the OSH Act and violations pursuant to Section 1983;

8. Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely the New York City Human Rights Law ("NYCHRL") codified in Administrative Code §8-109(a) and (f)(i), in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9. Alternatively, this Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations of Title VII §2000e-2(a)(1)&(2) as well as for violations the First Amendment Free Exercise Clause and Fourteenth Amendment substantive Due Process clause as

---

[3] Prior decisions by the approximately 200 other federal courts, including decisions by the United States Court of Appeals for the Second Circuit, do no prohibit Plaintiffs claims under Section 11(c)(1) and (2) of the OSH Act because all of those cases involved claims for either: 1) personal injuries caused by an employer's violation of an OSHA safety standard or regulation promulgated by the OSHA Secretary; or 2) wrongful termination of an employee by an employer in retaliation for the employee reporting an employer's safety violation and none of the prior cases involved claims that an employer wrongly terminated an employee for exercising their OSHA congressionally enacted statutory right to refuse immunization, medical treatment or a medical exam on religious grounds pursuant to Section 20(a)(5) of the OSH Act at 29 U.S.C. ¶669, which statutory right was enacted to protect all employees fundamental First Amendment Free Exercise right to refuse or choose their own medical treatment based on their religious or belief practices. See <u>Exhibit 1</u>

applied to private actors pursuant to Section 1983 who under color of law deprive citizens of their federal statutory or constitutional rights.

### b.  <u>Venue</u>

10. The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY and this case is properly brought in the Eastern District of New York under 28 U.S.C. §1391(b).

### **Exhaustion of Administrative Remedies**

11. Plaintiff is not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section 11(c)(2) because the statue only states that an employee "may" file a complaint with the OSHA Secretary and does not contain any mandatory language.

12. Plaintiffs adversely affected by union agreements that impinge on their rights secured by the Constitution are not required to exhaust administrative or intraunion remedies before suing in federal court. See *Seay v. McDonnel Douglas Corp.,* 427 F. 2d 996 (9th Cir. 1970),

### <u>JURY DEMAND</u>

13. Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. 38(b).

### <u>PARTIES</u>

### A.  PLAINTIFFS

### i.  <u>Terminated or Constructively Discharged/Locked Out Plaintiffs</u>

14. Plaintiff Loiacono lives in the Bronx and was an employee for many years of Allied200 who was involuntarily placed on indeterminate leave without pay (LWOP) and/or "constructively discharged" or "locked out" from his job[4] by Allied200 for exercising his fundamental right to refuse to submit to the City's Vaccine Order that Allied200 and its officers and employees conspired amongst themselves and agreed and conspired with Realty Advisory Board on Labor Relations, Inc. ("RABLR") and its officer Howard Rothchild along with the SEIU Local 32BJ (the "Union") and SEIU's officer Hector Figueroa to enforce in violation of the OSH Act and Allied200 failed to provide Plaintiff Loiacono an automatic exemption from the Vaccine Order and locked out Loiacono from performing his job as prohibited by the OSH Act Section 11(c)(1), the NYCHRL and alternatively prohibited by Title VII pursuant to Section 1983.

15. Plaintiffs include other similarly situated employees who worked for private sector employers/Defendants with offices in the City who were also either terminated, placed on LWOP or locked out of their jobs for exercising their fundamental right to refuse to comply with the City's Vaccine Order enforced by Defendants who also failed to either provide the OSH Act automatic exemption and/or who refused to allow Plaintiffs to continue to work their jobs unvaccinated in their workplace located in the City.

    **ii.**          **Coerced Plaintiff Class**

16. Plaintiffs also include employees who worked for private sector employers/Defendants with offices in the City who were also terminated or placed on LWOP for exercising their fundamental right to refuse to comply with the City's Vaccine Order enforced by Defendants who also failed to either provide the OSH Act automatic exemption and/or who refused to allow Plaintiffs to

---

[4] Under New York law an unlawful "lock out" is defined as an employee who is denied access to their workplace which forces the employee to cease their work activity pursuant to *McGinnis v. Bankers Life Co., Des Moines Iowa*, 334 N.Y.S. 2nd 270 (N.Y. App. Div. 1972)

continue to work their jobs unvaccinated in their workplace located in the City, but these Plaintiffs later went against their beliefs due to the fear of or actual financial hardship of either being denied an automatic exemption or being illegally locked out of their jobs and they took the mandated Covid-19 vaccine against their conscious beliefs. These Plaintiffs represent the "Coerced Class" who also suffered emotional distress damages from the coercion and harassment from their respective Defendant employers who wrongly enforced the illegal City Vaccine Order and threatened their jobs.

## B. **DEFENDANTS**

17. Defendant Allied Partners Management LLC a Section 802 Foreign Limited Liability Company registered in the State of New York that manages real estate in the City with offices for service of process located at 770 Lexington Ave, 17th Fl. New York, New York 10065.

18. Defendant 200 East 79th Street, LLC, a Section 203 domestic Limited Liability Company registered in the State of New York that owns and manages real estate in the City with a service of process office located at 13-15 West 54th Street, New York, New York 10019 c/o WIL Law Firm.

19. Realty Advisory Board On Labor Relations, Inc., (RABLR), a foreign non-for-profit corporation that provides labor relations services with service of process offices located at 12 East 41st Street, New York, New York 10017. RABLR represents the labor relation interest of commercial and residential real estate owners including specifically the interest of Allied200 in labor negotiations with Unions that represent employees of commercial real estate owners.

20. SEIU Local 32BJ ("32BJUnion") is an employee union with union Headquarters located at 25 West 18 Street, New York, NY 1001. The 32BJUnion represents employees of commercial and residential real estate owners in labor relation negotiations.

21.  Does 1-5,000+ represent employers with offices in the City who also denied employees the OSHA automatic exemption and either terminated, placed on LWOP or locked out employees from the performance of their jobs because employees remained unvaccinated and/or exercised their right to refuse the Covid-19 Vaccine pursuant to the employers internal policy or in agreement with the City's illegal Vaccine Order, when those employers had an independent duty to comply with the OSH Act.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

### A. Facts Relevant to All Causes of Action

22.  In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 2

23.  The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

24.  Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. §

651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 228 Cal. Rptr. 3d 406 (Cal. 2018).

25.  The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter OSHA Standards) See collectively  29 U.S.C. §652 Section 3(8) (Emphasis added).

26.  The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See  *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

27.  The OSH Act places a duty on all regulated entities defined in the OSH Act that must be complied with that is contained in the General Duty Clause at 29 USC 654 Sec 5(a)(1), which mandates that all regulated entities shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees. Exhibit 4

28.  The OSHA Standards, which includes additional regulations promulgated by the OSHA Secretary instruct employers on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

29.  The City of New York as a public employer is a regulated municipal entity that must comply with the OSH Act minimum safety standards and regulations pursuant to the OSH Act 29 USC 667, Section 18 through the New York OSHA State Plan. See Exhibit 3

30.  Defendants, as "employers" are entities that have employees and engage in business affecting commerce who must also comply with the OSH Act General Duty Clause as well as standards and regulations pursuant to the OSH Act at 29 U.S.C. §652 Section 3 and U.S.C. §654 Section 5.

31. The basic safety principle of the OSHA General Duty Clause is to place on regulated entities (hereinafter "employers") the duty to remove "hazards" from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death.

32. Employers are mandated by the OSHA Act to only use OSHA approved safety standard "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations that support the standards.

30. To protect employees and the general public that are present in workplaces from serious injury or death that could be caused by recognized airborne hazards in the workplace, including airborne infectious communicable diseases like Covid-19, OSHA approved specific safety standard, regulations referred to generally as Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards); See Exhibit 11

31. In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. See Exhibit 8

32. These approved safety methods have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic, See Exhibit 1 and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit 12, Page 1)

33. On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19"). See <u>Exhibit 5</u>

34. According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them. See <u>Exhibit 6</u>

35. The airborne virus that causes the Covid-19 infection that is recognized in the workplace is workplace illness covered by the OSH Act because the Covid-19 airborne virus can be transmitted into the workplace atmosphere by employees infected with the Covid-19 virus when the infected employee talks to co-workers or the general public as part of the employees daily job responsibilities and the employee while talking and coughing or sneezing while talking in the workplace atmosphere the Covid-19 airborne hazard vapors, droplets or fluids emit into the atmosphere from the infected person and another employee or someone from the public inhales the airborne Covid-19 virus into their mouth or nose that results in an infection of the other employee or public person in the workplace. See Exhibit _____

36. Pursuant to the OSHA General Duty Clause and the Respiratory Standards, Defendants have a duty to remove any recognized airborne hazards emitted into the workplace and prevent employee exposure to any recognized airborne hazards in the workplace, that includes airborne infectious diseases recognized in the atmosphere of the workplace, including but not limited to the airborne

infectious diseases of SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and the airborne Covid-19 virus. See Exhibit 6

37. Pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

38. The primary objective of the OSHA Respiratory Standards is to implement methods that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See Exhibit 9, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

39. OSHA Respiratory regulations also mandate employers to provide "remote work from home" as an additional safety method that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 9, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

40. For over two decades, OSHA has had "remote work" regulations, and "remote work" is an approved method for preventing employee exposure to workplace airborne hazards.  Exhibit 10

41. On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines has not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. Exhibit 11

42. The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards.[5]

43. The OSHA Department of Labor Solicitor stated in their Response to the Emergency Petition brought by various private sector employers that the OSH Act standards and regulations for preventing exposure to any hazardous virus that causes serious physical injury and/or death are sufficient to deal with new Covid-19 airborne hazard and, in summary, that OSHA would not promulgate a new standard that would allow any Covid-19 vaccine to serve as a new method that employers can use to meet their duty under the General Duty Clause.   See Exhibit 12

44. All Employers, including Defendants, are mandated to comply with the OSHA minimum Respiratory standards by using only the authorized methods approved by OSHA to keep employees safe during an outbreak of any recognized airborne virus in the workplace, including the airborne virus that causes a Covid-19 infection in the workplace.

45. No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can immunizations or vaccines shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease. See Exhibit 9 and Exhibit 13

46. According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19, that can cause serious injury or death as required to be an OSHA

---

[5] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

approved safety minimum safety method that protects employees in the workplace. (See Exhibit 13 Dr. Montgomery Affidavit)

47. According to Dr. Montgomery and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

48. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

49. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

50. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

51. Neither does FDA approval of any vaccine for use, nor does any claim from the Center for Disease Control (CDC) that the Covid-19 vaccine is "safe and effective" automatically make the Covid-19 vaccine, an OSHA approved "safety method" that employers can use to prevent employee and the public's exposure to the recognized airborne communicable disease called Covid-19.

52. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act and regulations to prescribe FDA "medical treatments" to eliminate recognized airborne workplace hazards like Covid-19 that can cause serious injury or death.

53. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

54. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

55. If an employer desires to use a new and unapproved safety method to prevent employee exposure to any airborne hazard recognized in the workplace, the employer has to seek a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

56. Neither the City nor Defendants applied for a variance from OSHA to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

57. All employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

58. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

59. All employers, including Defendants, must comply with 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act which bans employers from requiring employees to submit to medical examinations,

immunizations or vaccines, or treatments that have been funded by HHS research or innovative methods investments pursuant to 29 U.S.C. §669(a)(1) when the employee objects on religious grounds and provide any employee with an "automatic exemption" from any immunization,

60. The Covid 19 vaccine is a medical treatment or immunization/vaccine that was funded by HHS through the Rapid Response Partnership Vehicle (RRPV) Consortium designed to support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics.

61. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  See Exhibit 14

62. Between 2009 and 2020, neither the City nor Defendants have ever mandated any private sector employee to submit to any vaccine to prevent the spread of the H1N1 airborne communicable disease during the H1N1 Global Pandemic.

63. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See Exhibit 15

64. The HHS/FDA EUA approval of the experimental Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

65. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make any vaccines, in general, freely available to the general

public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See Exhibit 16

66. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment within any state, federal or municipal agency or for the private sector.

67. No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" to either remove recognized airborne hazards from the workplace atmosphere or to shield employees from exposure to any recognized airborne hazard in the workplace, including for the airborne Covid-19 hazard.

68. Immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not and are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccine shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See Exhibit 13  Affidavit of Expert Dr. Baxter Montgomery

69. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to obtain an exemption from any employer vaccine mandate.

70. Section 20(a)(5) of the OSH Act requires Defendants to provide an "automatic exemption" to employees who object to any immunization, medical treatment or examination on religious grounds.

**B. Facts Applicable to Plaintiff Loiacono Claims and Similarly Situated Plaintiffs**

71. On June 23, 2022, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

72. Notwithstanding the end of the state of emergency, on August 2, 2021, former New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of New York City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

73. On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued an Emergency Order requiring all private employers to require private sector employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. (hereafter the Vaccine Order) See Exhibit 15

74. The purposed of the NYCDOH Vaccine Order states as follows:

> "the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17109(b) of Administrative Code, the Department may adopt vaccination measures to effectively **prevent the spread of communicable diseases**;"

> "do hereby exercise the power of the Board of Health **to prevent, mitigate, control** and abate the current emergency"

75. The Vaccine Order required, in summary, that all employers located in the City to mandate that their employees provide proof of vaccination against Covid-19 by December 27, 2021 and if an employee failed to provide proof of Covid-19 vaccination, the employer was required to "exclude from the workplace any worker".

76. On September 21 and 27, 2021, Plaintiff Loiacono received a work email from the Defendant Allied200 Board of Managers titled "Important Covid-19 Compliance" in summary requiring employees to where masks and that no masks were required on the 2nd Floor roof deck.

77. On or around October 14, 2021, SEIU Delegate Scott Cohen called Plaintiff Loiacono to verbally explain that a Covid-19 vaccination mandate could be implemented in the future and that there would be options available to him regarding his employment under the mandate. At no time during the call did Mr. Cohen disclose that the Union had entered into any previous agreements regarding any potential Covid-19 vaccine mandate. Exhibit 16

78. Unbeknownst to Plaintiff Loiacono, on September 30, 2021 the Union Defendant and Defendant Realty Advisory Board on Labor Relations, Inc. entered into an agreement on behalf of Plaintiff Loiacono's employer Allied200 that required all Defendant members of the RABLR to either: 1) place all employees who do not provide proof of vaccination by the Defendant's determined deadline on leave without pay (LWOP) for a period of months until they get vaccinated or obtain a religious exemption, if the Defendant approves of the exemption, or 2) be "separated" from their jobs if the employee does not elect a voluntary LWOP, but the separation would not be deemed voluntary nor a termination for misconduct. See Exhibit 17

79. Sometime on or around December 22, 2021, Allied200 Resident Manager, Joe Saljanin (Saljanin) inform Plaintiff Loiacono verbally that he was mandated to be vaccinated by December 27, 2021 in order to continue to work due to the City's Vaccine Order that set the December 27, 2021 deadline.

80. Joe Saljanin told Plaintiff Loiacono to get vaccinated to "make my life easier."

81. On December 22, 2021, Plaintiff Loiacono asked Saljanin and Union Del. Cohen how to make a religious exemption request and he was told to make the request to Allied200's HR Department.

82. On December 22, 2021, Allied200's Board Member Bruce Gutkin asked Plaintiff Loiacono to leave the building to speak with him and told him to take the vaccine "for the greater good of society".

83. Allied200's Board President Alex Freedman asked Plaintiff about his hesitation about getting the vaccine and gave his personal experience with getting the vaccine to try coerce Plaintiff Loiacono to take the Covid-19 vaccine.

84. On December 22, 2021, Plaintiff Loiacono requested via separate emails to Union Delegate Cohen and Saljanin instructions on how to submit a religious exemption request and Union Delegate Cohen responded on December 24, 2021 that the City's Vaccine Order was law and that he could be terminated if Plaintiff Loiacono did not provide proof of vaccination by December 27, 2021. See Exhibit 18

85. On Friday, December 24, 2021, Plaintiff Loiacono received a Memorandum from Allied200 Resident Manager Saljanin dated December 22, 2021 providing notice for the first time that under the New York City Department of Health Vaccine Order Plaintiff Loiacono and other employees were mandated to take the Covid-19 vaccine by December 27, 2021 and that religious exemptions did not change the mandate and that religious exemptions would only be granted based on Allied200 policy that required employees first provide a religious exemption letter from a religious institution on the organizations letterhead signed by the head of the religious institution. See Exhibit 19

86. Also on Friday, December 24, 2021, Plaintiff Loiacono submitted via email to Allied200's Jaclyn Pagnotta, VP of Human Resources and to Union Delegate Scott a request for a religious exemption from the City's Vaccine Order enforced by Allied200 but the request was not on the letterhead of a religious institution because federal law does not require it in order for him to receive an exemption. See Exhibit 20

87. On December 24, 2021, Plaintiff Loiacono received an automatic reply email from Ms. Pagnatta stating that she was out of the office until Tuesday, December 28, 2021. See <u>Exhibit 21</u>

88. Shortly after receiving the "auto reply" email from Ms. Pagnatta, Plaintiff Loiacon called the number in the auto reply email to Amanda in her office and he called the Resident Manager and there was no answer.

89. On December 27, 2021, Plaintiff Loiacono showed up for work unvaccinated but wearing the required safety masks, believing that he would be notified that his religious exemption request would be granted; but instead Plaintiff Loiacono was verbally told by the Resident Manager Saljanin to leave the workplace because he was not vaccinated and did not have a religious exemption which he complied with.

90. Also, on December 27, 2021, Plaintiff Loiacon handed his Resident Manager Saljanin written document titled "Notice of Discrimination" just before he was instructed to leave his workplace building. See <u>Exhibit 22</u>

91. Allied200 did not grant Plaintiff Loiacono the OSHA "automatic exemption".

92. Plaintiff was notified by Ms. Pagnotta in a short phone conversation later on December 27, 2021 that his religious exemption was denied and she said that his request was denied because the request was not on a religious organization letterhead and "even if it where, because the job requires contact with the general public the only accommodation that could be given is a "leave without pay".

93. On or around December 28, 2021, the Allied200 Resident Manager called Plaintiff Loiacono back to the building to give him a form from the New York City Legal Department with instructions from the City Legal Department regarding religious exemptions and the circumstances when religious exemptions would be denied that the Resident Manager required Plaintiff Loiacono to sign. See <u>Exhibit 28</u>

94. On January 11, 2022, Plaintiff Loiacono had another conversation with Ms. Pagnotta wherein she explained that Plaintiff Loiacono was instructed to leave his job. See telephone transcript of call at Exhibit 23

95. Around January 18, 2022, Plaintiff Loiacono received a letter from Ms. Pagnotta at Allied200 that explained that Plaintiff Loiacono was placed on leave without pay and locked out of his job due to the New York City mandate and that Allied200 could not provide any other solution that would permit Plaintiff Loaicono to continue to work unvaccinated. See Exhibit 24

96. Because Plaintiff Loiacono was locked out of his job, unable to work and his exemption from the City Covid-19 mandate agreed to be enforced by Allied200 was denied, Loiacono applied for unemployment benefits because he was locked out his job and effectively discharged.

97. Defendant Allied200 objected to Plaintiff Loiacon's claim for unemployment benefits by reporting that he was terminated for "cause," which prevented him from receiving unemployment benefits despite the fact that Allied200 entered into an agreement with RABLR that any employee locked out from their job for refusing to take the Covid-19 vaccine would not be terminated for cause so that said employees could receive unemployment benefits. See Exhibit 25

98. Rather than allow Plaintiff Loiacono to receive unemployment, Allied200 continued to coerce Plaintiff Loiacono to take the Covid-19 vaccine by sending him letters offering to allow him to return to his job if he takes the Covid-19 vaccine. See Exhibit 26

99. Allied200 continued the coercive tactics by terminating Plaintiff Loiacono's MetLife Insurance around March 2, 2022, which should have been maintained since he was not yet terminated. See Exhibit 27

100. During the July 15, 2022 New York State Unemployment Benefit hearing, Ms. Pagnatta VP for Allied admitted that Allied200 is responsible for complying with OSHA standards, regulations

and statutory requirements and that Allied200 Board ignored the OSHA statutory requirements. See  Exhibit 29Page 24

101.    In April 2020, near the start of the Covid-19 Pandemic, Ford Motor Corporation increased the manufacture of Powered Air Purifying Respirators (PAPR) to national distribution to employers to provide as OSHA approved safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne virus that causes the Covid-19 disease. See Exhibit 30

102.    OSHA along with NIOSH and the CDC approves of PAPRs as a method to shield employees from recognized airborne hazards.   Exhibit 31

103.    Under information and belief, Defendant Allied200 knew or should have known that the mandated Covid-19 vaccine did not meet the OSHA Respiratory standard method that requires workplace safety methods to either remove an airborne hazard from the air or shield workers and the public from exposure to any airborne hazard in the workplace and yet Allied200 still enforced the City's Covid-19 vaccine mandate despite the fact that the vaccine violated OSHA's minimum standards.

104.    Under information and belief, Defendants Allied200 and the City knew or should have known that the EEOC/Title VII and NYCHRL "undue burden" standard/regulation does not provide Defendant Allied with an exemption from complying with the requirement in OSH Act Section 20(a)(5), which provides an automatic exemption to any employee who refuses to take any immunization, including the new Covid-19 vaccine, treatment or examination administered through the research activities of the Secretary of Health and Human Services under 29 U.S.C. §669 Section 20(a)(1) based on religious grounds.

105.    Under information and belief, Defendant the City and Allied200 knew or should have known that the Vaccine Orders and Allied200's policy of enforcing an illegal Vaccine Order and

terminating employees for exercising OSHA rights violated the OSH Act and were preempted by the OSH Act pursuant to 29 U.S.C. §667 Section 18(a).

106. Under information and belief, Defendants the Union, RABLR, Ms. Pagnatta, Howard Rothschild, Hector Figueroa, Eric Hadar and Alex Freedman knew or should have known that: 1.) the Vaccine Orders were preempted by the OSH Act; 2) the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method; 3) Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations.

107. Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act standards, regulations and statutory rights for employees under Section 20(a)(5) and knew the OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid-19 vaccine – pursuant to Section 20(a)(5) of the act.

108. Under information and belief, all Defendants similarly situated to Allied200, the Union, RABLR, knew or should have known that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and Defendants collectively and in their individual capacities agreed with the City and the City's legal department to ignore the application of the OSH Act standards, regulations and statutory provision pursuant to Section 20(a)(5) of the act.

109. All Plaintiffs similarly situated to Plaintiff Loiacono were denied their request for exemption from the Vaccine Order and were either terminated, put on LWOP and/or locked out or prevented from entering their workplaces to perform their jobs because they exercised their right to refuse the Covid-19 vaccine.

110. Under information and belief, some Plaintiffs were granted exemptions from Defendants from complying with the Vaccine Order from their respective employers,

111. Under information and belief, all Locked Out Plaintiffs and some Coerced Plaintiffs were "locked out" of their jobs by their respective Defendants when they were told not to return to their jobs and prevented from returning to their jobs to perform their jobs because they refused to be vaccinated based on religious or non-religious grounds for abstaining from the Covid-19 or based on a medical reason. See *Fownes Bros. & Co., Application of*, 204 N.Y.S.2d 998, 25 Misc.2d 349 (N.Y. Sup. Ct. 1960) (held that: Lockout is defined as, a proceeding by an employer of labor the purpose of which is to bring his employees to his terms by shutting off their employment and persuading other employers engaged in a similar business not to employ them thereby forcing them to return to work for him on his terms.")

112. Under New York law, Plaintiffs on LWOP are deemed to be discharged from employment because they ceased to be able to engage in work activity according to the New York Court of Appeals in the case *McGinnis v. Bankers Life Co., Des Moines, Iowa*, 334 N.Y.S.2d 270 (N.Y. App. Div. 1972)

113. Sometime after October 2022, all Defendants failed to automatically reinstate their respective Plaintiffs to their jobs after the Covid-19 Pandemic and New York City state of emergency was declared over.

114. All Defendants knew or should have known that the enforcement of the City's Vaccine Orders and terminations and/or lock outs without pay of their respective Plaintiffs also violated the New York City Human Rights Law which bans "quid pro quo" illegal conditions of employment, wherein Plaintiffs were coerced by Defendants to submit the Covid-19 vaccine by threats of t job terminations.

115. The acts complained of herein were carried out by the aforementioned individual defendants in their official capacity with actual/or apparent authority and in their individual capacity.

116. According to Federal public records published by FederalPay.org from data provided by the Small Business Administration as of June 30, 2023, Defendant Allied Partners Residential Management LLC received $1,435,500 in Covid-19 Pandemic Federal Paycheck Protection Program (PPP Funds) funds for the purpose of saving 103 jobs, yet Plaintiff Loiacono was locked out and terminated from his job for exercising his fundamental federal and constitutional rights.

117. Defendant Allied Partners Residential Management received additional Pandemic PPP Funds in the amount of $1,213,578 for the purpose of preserving 63 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

118. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,200 to preserve 25 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

119. Defendant Allied Partners Management, LLC again received Pandemic PPF Funds in the amount of $425,345 to preserve 17 jobs, yet Plaintiff Loiacono was terminated during the Pandemic for exercising his federal and/or constitutional rights.

**FIRST CAUSE OF ACTION**

**(Federal Declaratory Judgement Act 28 U.S.C. §2201)**
**Permanent Injunctive Relief**

120. Plaintiffs realleges and incorporates by reference Paragraphs 1-118 of this Complaint as if fully set forth herein.

121. 28 U.S.C. §2201(a) provides that "in a case of actual controversy …..in any civil action …..any court of the court of the United States…..may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought….

122. Plaintiffs has a controversy with Defendants regarding their rights to: 1) refuse pursuant to the OSH Act, the First Amendment Free Exercise Clause and the Fourteenth Amendment substantive due process clause to submit to and/or provide proof of vaccination against the virus that causes the Covid-19 disease which causes serious injury or death; and 2) Plaintiffs' right to obtain remedy pursuant to the OSH Act under 29 U.S.C. §660 Section 11(c)(1)&(2).

123. Defendants have mandated and enforced either: 1) their own requirement that their respective Plaintiff employees submit to and provide proof of vaccination against the virus that causes the disease called Covid-19, and/or 2) the Defendant City's Vaccine Orders and have either terminated, locked out or placed on LWOP their respective Plaintiffs because Defendants all believe that Plaintiffs have no right to refuse to provide proof of Covid-19 vaccination or that Plaintiffs right to refuse is preempted by Defendants right to deny providing Plaintiffs an automatic based on Defendants egregiously erroneous application of Title VII "undue burden" case law to a workplace safety matter exclusively governed by the OSH Act.

124. Plaintiffs request this Court pursuant to the Federal Declaratory Judgement Act 28 U.S.C. §2201 to declare Plaintiffs rights, specifically the right to refuse immunizations and vaccines, including the Covid-19 vaccine on religious grounds under Section 20(a)(5) and the right to be free from wrongful termination pursuant to Section 11(c)(1)&(2) of the OSH Act along with the right for all Plaintiffs to choose one's own medical treatment for religious and non-religious grounds under the Constitutions Fourteenth Amendment substantive due process clauses.

125. Plaintiffs seek a declaration that state, municipal and private sector employers must grant any employee who requests an "automatic exemption" from any immunization/vaccines, medical

treatment, or medical exam pursuant to Section 20(a)(5) of the OSH Act or for non-religious reasons under the substantive due process clause of the Fourteenth Amendment, or pursuant to the OSHA preemption clause in Section 18 , so long as an employees right to refuse is not declared a crime by the any state or the federal government.

126. Plaintiffs further requests the Court to declare Plaintiffs right to sue Defendants pursuant to Section 11(c)(1)&(2) under the OSH Act and to obtain all appropriate relief available.

127. The federal government regulates employee safety through the Occupational Safety and Health Act of 1970 (OSH Act), which is administered by Occupation Safety and Health Administration (OSHA). See 29 U.S.C. §§651-78.

128. The OSH Act authorizes the Secretary of Labor to promulgate federal occupational safety or health standards, id. § 655, that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment. § 652(8).

129. OSH Act §18b expressly pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan, or any state or private employer can seek a variance to an existing standard for an experimental proposed standard, so long as the experimental variance is as effective as the existing standard. See 29 U.S.C. 655-Section 6(b)(6).

130. The OSH Act provides a standard and regulation for airborne hazards, specifically for communicable diseases through the Personal Protective Equipment standard (29 CFR 1910.132) and Respiratory Protection standard (29 CFR 1910.134) which provide protection for workers when exposed to contact, droplet and airborne transmissible infectious agents; and OSHA's TB compliance directive which protects workers against exposure to TB through enforcement of

existing applicable OSHA standards and the General Duty Clause of the OSH Act (collectively "Infectious Disease Standards").

131. The existing OSHA Infectious Disease standards apply to the City through the approved New York State Plan approved in 1984.

132. The New York State Plan does not cover standards for Infectious Respiratory Diseases and therefore the State of New York has not taken responsibility for setting standards for any infectious disease including respiratory diseases. See State Plan Standards at 12 NYCRR Part 800.6, 800.7, 800.5, 801 and 820.[6]

133. Because the Respiratory Standard and General Duty Clause are broadly written, they apply to the Covid-19 virus because it is an airborne hazard in the workplace and the existing Respiratory Standards applies specifically to Covid-19, including all variants and new novel airborne diseases.

134. The City's Vaccine Order expressly states that it directly, substantially, and specifically regulates occupational safety and health for City and private employees, and therefore, the Order is an occupational safety and health standard, albeit an illegal standard that violates the OSH Act, within the meaning of the OSH Act despite the fact that the Order says it is for the benefit of the general public.

135. The City's Vaccine Order also conflicts with the methods by which the OSHA standards control airborne infectious diseases because the Covid-19 vaccine does not eliminate an employee's exposure to nor remove the Covid-19 airborne viral contaminant from the atmosphere in the workplace, which is the sole objective and method of the OSHA Respiratory standard which is a workplace environmental protocol to works on the outside of the employees' body to keep them

---

[6] See New York State Plan Codes, Rules and Regulations at https://dol.ny.gov/system/files/documents/2021/03/part801-805.pdf

safe. See *International Paper Co. v. Ouellette*, 479 U. S. 481, 494 (1987). (Held that "state law is pre-empted when it conflicts with the method by which the federal statute was designed….").

136. The Vaccine Order implement a "medical treatment" that is injected into the body of employees that effects the employee's natural immune system but does nothing to shield the employee from exposure to any airborne viral contaminant, specifically the airborne virus that causes Covid-19.

137. The Covid-19 vaccine as a medical treatment does not meet the "minimum safety standard" requirements to be an approved "method" that can prevent the exposure to airborne respiratory communicable diseases under the OSHA regulations and is therefore preempted by the OSH Act standards and regulations.

138. The Vaccine Orders also conflict with general scheme of the OSHA Act, which was to place a non-delegable duty on employers to create safe workplaces to retain employees.

139. On May 18, 2021, a New York State agency adopted the OSHA Respiratory standard 29 CFR 1910.134, and lists Powered Air Purifying Respirators (PAPRs) as an engineering safety device, which could have been adopted and implemented by all Defendants in order to provide PAPRs to employees who refused to take the Covid-19 on religious grounds or to employees who could not perform their jobs remotely. See Exhibit 32  - Directive 4068 dated 5/18/2021[7]

140. Based on the foregoing, Plaintiffs seek a declaratory judgement pursuant to 28 U.S.C. §2201 based on the jurisdiction granted this United States District Court in Section 11(c)(2) to "order all appropriate relief" which shall include determining that City's Vaccine Orders are preempted by the OSHA Act and are therefore void and Plaintiffs seek a permanent injunction prohibiting the City from enacting any future Vaccine Mandates applicable to private sector employers in violation of the OSH Act.

---

[7] See May 18, 2021 New York State Directive 4068 at https://doccs.ny.gov/system/files/documents/2021/05/4068.pdf

141. Plaintiffs seek permanent prospective injunction against all Defendants to forever ban private sector Defendant employers from ever enforcing any future vaccine/immunization, medical treatments or medical exams implemented by any state or municipality or pursuant to a Defendants own internal policy that violates the strict prohibition against denying an employee's right under Section 20(a)(5) of the OSH Act.

142. Plaintiffs also seeks a declaratory determination that the *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) decision regarding the power of states and municipalities to mandate vaccines or immunization under its police power has also been overruled by federal regulations that decriminalized the act of refusing state compulsory vaccine, specifically by the OSH Act and 1944 Public Health & Welfare Act, and declare that all employees have the right to choose and refuse their medical treatment under the substantive Due Process Clause of the Fourteenth Amendment and as held by the U.S. Supreme Court in *Jacobson* court and the *Cruzan.*[8]

143. Plaintiffs also seek a declaration that "remote work" is an OSHA authorized safety method that protect employees from exposure to airborne hazards in the workplace, including the airborne hazard of the Covid-19 virus.

144. Plaintiffs also seek a prospective injunction that requires all Defendants to provide written notice, approved by this Court, to all employees of their right to refuse immunization/vaccines, medical treatment and medical exams pursuant to 29 U.S.C. §669 Section 20(a)(5) of the OSH, , so long as the right to refuse is not criminalized by any federal or state law, and provide all employees written notice of the right to bring a private right of action or an action with the Secretary of

---

[8] *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (held – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process) *Jacobson* (held that "the inherent right of every freeman to care for his own body and health in such way as to him seems best......But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.......This court has more than once recognized it as a fundamental principle....")

OSHA pursuant to 29 U.S.C. §660 Section 11(c)(1)&(2) of the OSH Act (collectively "OSHA Rights") and said notice shall be provided to all employees within 15 business days of any Court order to this effect.

## SECOND CAUSE OF ACTION
### (Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1)&(2))

145. Plaintiffs realleges and incorporates by reference Paragraphs 1-135 of this Complaint as if fully set forth herein.

146. Plaintiffs have a federal statutory right under the OSH Act 29 U.S.C. §669 Section 20(a)(5) to refuse any examination, treatment or immunization, which includes the Covid-19 vaccine and to be free from wrongful discharge for exercising that right pursuant to 29 U.S.C. §660 Section 11(c)(1).

147. Defendants denied their respective Plaintiffs the OSH Act right to an automatic exemption when an exemption was requested by each Plaintiff and each Defendant subsequently terminated their respective Plaintiff employees for refusing to provide proof of Covid-19 vaccination or placed Plaintiffs on LWOP or locked out Plaintiffs from their jobs and pay for refusing to provide proof of vaccination.

148. Some Defendants granted some Plaintiffs an automatic exemption, but still locked them out of their jobs as instructed by the Vaccine Order and refused to pay these Plaintiffs while they were locked out.

149. Some Plaintiffs requested an exemption from Defendants enforcement of the Vaccine Order or from Defendants own internal Covid-19 vaccine mandate, but when Defendants denied the exemption, certain Plaintiffs feared the loss of income and subsequently provide proof of Covid-19 vaccination after being coerced and harassed by the threat of loosing their pay.

150. The City by and through the Mayor and NYC-DHMH Commissioner in their official capacity caused Plaintiffs to be wrongly discharged by mandating that Defendant Allied200 and other Defendants to either terminate or locked out Plaintiffs from their jobs pursuant to the Vaccine Orders in violation of the OSH Act Section 11(c)(1) for exercising Plaintiffs right refuse the Covid-19 immunization/vaccine guaranteed by OSH Act Section 20(a)(5), the First Amendment Free Exercise and Fourteenth Amendment due process clauses and alternatively by Title VII.

151. Defendants agreed with and enforced the City's Vaccine Order mandate based on each Defendants policy to comply with the City's illegal workplace safety Vaccine Order and to ignore the OSHA mandates and each Defendant terminated and/or locked out their respective Plaintiffs from their jobs in violation of Section 11©(1) of the OSH Act.

152. As a result of the foregoing, Plaintiffs are entitled - pursuant to 29 U.S.C. §660 Section 11(2) of the OSH Act - to reinstatement to the positions Plaintiffs held before the discharge or to a similar position with the same title and job description and seniority and tenure, backpay from the date Plaintiffs were locked out, compensatory damages including, but not limited, emotional distress injury, to lost monetary retirement benefits, unemployment benefits and lost retirement years, vacation, sick and personal leave pay, removal of negative report in their employee file other consequential damages sustained by each of the Plaintiffs as determined by a jury.

153. Plaintiffs are further entitled to punitive damages pursuant to Section 11(c)(2) of the OSHA Act jointly and severally against Defendants plus reasonable attorney's fees, costs and interest under the appropriate federal or state interest rate. See *Reich v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187, 1190 (1st Cir. 1994)


## SECOND CAUSE OF ACTION
**(Wrongful Discharge in Violation of Title VII of the 1964 Civil Rights Act – 42 U.S.C. §20000(d) + (e) et. seq. Under Color of Law pursuant to 42 U.S.C. §1983)**

**Alternative Claim**

154. Plaintiffs realleges and incorporates by reference Paragraphs 1-144 of this Complaint as if fully set forth herein.

155. Plaintiffs have a federal statutory right under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §20000(e-2) et. seq. ("Title VII") to be free from unlawful discharge with respect to compensation, terms, conditions, privileges of employment because of Plaintiffs religious practice, including the practice of refusing immunization, including the Covid-19 vaccine based on religious grounds.

156. The conduct by and through the City of enacting the illegal Vaccine Order that was agreed to and enforced by all Defendants deprived Plaintiffs of the rights, privileges and immunities guaranteed under Title VII to be free from wrongful discharge for exercising their First Amendment Free Exercise right of refusing Covid-19 vaccination.

157. By reason of the wrongful discharge of Plaintiffs for exercising their religious practice of refusing the Covid-19 vaccine, Plaintiffs are entitled to compensatory, consequential and equitable relief available under Title VII.

158. Defendants, the City, collectively and individually, while acting under color of municipal law, which included, but not limited, to the enactment of Vaccine Order that violates the OSH Act standards and which resulted in the wrongful discharge of Plaintiffs pursuant to a custom, usage, practice, procedure, or rule of the City to fine private sector employers for failing to comply with a City order, which threat of a civil fine against the private sector employer Defendants resulted in Defendants either terminating or locking out employees who refused to provide proof of Covid-19 vaccination.

159. The custom, policy, usage, practice, procedure and rule of the City included the instruction employers in the City to deny religious exemption requests and to block or lock unvaccinated employees from their physical workplaces which resulted in the unlawful discharge of Plaintiffs. See Exhibit_____, page 18 of the Transcript)

160. The Commissioner for the City's Department of Health is responsible for issuing public health regulations for the City through the Commissioner's power authorized under N.Y. Public Health Law 206 – Commissioner; General Powers and Duties.

161. The Commissioner is the final policymaker for the issuance of public health regulations for the City.

162. The City's previous Commissioner in 2021 in his official capacity under color of law pursuant to PHL §206 issued the Vaccine Orders that caused Defendants to terminate or lock out Plaintiffs starting December 27, 2021 for refusing to submit to the Covid-19 Vaccine Orders based on religious grounds in violation of the First Amendment. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (Held in summary that government officials performing discretionary functions are not shielded from liability for civil damages if their conduct "violate clearly established …. constitutional rights which a reasonable person would have known".)

163. The City is, therefore, liable for the acts of the Commissioner in the issuance of the Vaccine Orders that caused Plaintiffs to be place on involuntary leave without pay (discharged) for exercising their right to refuse to take the Covid-19 vaccine for religious ground in violation of the First Amendment, the Fourteenth Amendment substantive Due Process clauses and the OSH Act Section 11(c)(1)&(2) and Section 20(a)(5).

164. Defendants had no compelling reason for requiring its employees to disclose details of their religious beliefs, or for requiring a clergy letter in order to grant Plaintiffs automatic exemption from the Covid-19 Vaccine Order provided under OSH Act Section 20(a)(5).

165. Defendants enforcement of the City's illegal Covid-19 Vaccine Order along with Defendants practice of refusing the OSHA automatic exemption and the termination and/or lock out of Plaintiffs for refusing to submit to the City's Vaccine Orders based on religious grounds interferes and places a substantial burden on the religious practices of Plaintiffs, specifically their Free Exercise right to abstain from taking the Covid-19 vaccine and remain working based on religious grounds.

166. Defendants practice and conduct violates Plaintiff's right to the free exercise of religion, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment and protected by the OSH Act at Section 20(a)(5) and Section 11(c)(1).

167. Defendants, including individually named Defendants, practice of denying any other request for exemption from the Covid-19 vaccine be it medical or non-religious grounds from Plaintiffs and discharging Plaintiffs or any employee for refusing to take the Covid-19 vaccine or provide proof of vaccination violates Plaintiffs and all employee's right to choose or refuse their medical care which is guaranteed to all competent U.S. citizens under the Fourteenth Amendment substantive Due Process Clause and held by the U.S. Supreme Court in the *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) and in the *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990) cases.

168. RABLR knew or should have known that the agreement it entered into with the Defendants and Union violated the OSH Act.

169. The City's Vaccine Order was invalid on the date it was executed because it was preempted by the OSHA Act; and, therefore, the City had absolutely no government interest for enforcing the Vaccine Orders on Allied200 and other Defendant private sector employers and all Defendants should have and could complied with the existing OSH Act Respiratory standards and regulations

that would have allowed Plaintiffs to either continue to work remote or provide Plaintiffs with the appropriate PAPR safety equipment so that Plaintiffs could continue to work in a safe workplace .

170. Neither the City nor any Defendants have obtained a variance from OSHA approving the Covid-19 vaccine as a necessary method for the safety of others.

171. As a direct and proximate result of the City's enforcement of its preempted, invalid and unauthorized workplace safety standard in violation of the OHA Act, Plaintiffs have suffered injuries and damages, including loss of pay since December 27, 2021, lost of retirement credits, for some of Plaintiffs and other class members, loss of unemployment benefits, damage to their employment record and emotional distress damages.

172. Defendant Allied200 and other Defendants knew or should have known that the City's Vaccine Orders were illegal yet Defendants agreed to enforce the City's Vaccine Orders and failed to provide the automatic exemption or even a Title VII exemption when Allied200 and all Defendants knew and should have known that Defendants have a strict duty to comply with the OSHA Respiratory Standards by providing Plaintiffs either remote work or a PAPR in order to continue to work and that the Title VII "undue burden" exception did not provide an excuse for Defendants' compliance with the OSHA Respiratory standards and regulations.

173. Defendants failure to reinstate respective Plaintiffs into their jobs or similar job since the City's Vaccine Order was repealed and continued denial of other employment benefits constitutes willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed against all Defendants and individual Defendants joint and severally.

174. Defendants were willful participants in joint and significant activity with the City by enforcing an illegal mandate, which the City threatened to fine and/or sanction Defendants for non-compliance with the City's Vaccine Order which joint activity caused Defendants to use "compulsion and coercion" against the Plaintiffs by terminating or locking out Plaintiffs from their jobs pursuant to

the City's Vaccine Order. See *Bruette v. Human Society of Ventura County*, 294 F.3rd 1205 (9th Cir. 2002), see *Lee v. Katz*, 276 F3d 550,554 (9th Cir. 2002) and see *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)

175. The City and Allied200 along with all Defendants had a "meeting of the minds" to violate Plaintiffs OSH Act rights along with Plaintiffs rights under the First Amendment Free Exercise and Fourteenth substantive due process clause which provide Plaintiffs the right to be to refuse and choose Plaintiffs own medical treatment. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F2d 1539, 1546-47 (9th Cir. 1989)

176. As are result of Defendants agreement to enforce the City's Vaccine Orders all Plaintiffs were locked out of all jobs in the City as Plaintiffs could not find any job in the City because of this conspiracy to coerce Plaintiffs to take the Covid-19 vaccine.

177. Under information and belief, the City sent to Defendant Allied200 and all Defendant employers in the City instructions on how to deny employees their OSHA and First and Fourteenth Amendment rights to refuse to take or provide proof of Covid-19 vaccination. See Exhibit _____

### THIRD CAUSE OF ACTION
**(Religious Coercion Discrimination)**
**New York City Human Rights Law - Administrative Code §8-107(3) & §8-109(a)(f)(i)**

178. Plaintiffs realleges and incorporates by reference Paragraphs 1-168 of this Complaint as full set forth herein.

179. Because the City's Order was preempted by the OSHA Act, the City had no authority to require Allied200 or any other Defendants to enforce to the City's Vaccine Orders.

180. Defendants agreement and/or meeting of the minds with the City to violate Plaintiffs rights protected by the City's Human Rights Law (CHRL) constituted discrimination pursuant to the NYCHRL

Administrative Code § 8-107 Subdivision (3)(a), which states that, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer …… to:

> impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage," CHRL § 8-107 [1] [a] [3].

181. Defendant Allied200 and all other similarly situated Defendants had no authority to refuse any respective Plaintiffs their automatic exemption under the OSH Act nor to require Plaintiffs to disclose the details of their religious practices or require a clergy letter as a pre-condition for them receiving an exemption from the illegal Vaccine Order or as a pre-condition for receiving the OSH Act right to either work remotely or to receive safety equipment, like the PAPR, violated the NYCHRL.

182. Defendants investigation into Plaintiffs religious practices and denial of their request for an exemption from the Vaccines Orders was intended to unlawfully harass and coerce Plaintiffs to violate or forego their religious practice of abstaining from taking the Covid-19 vaccine, when the OSHA Act provided more than adequate safety provisions that did not require Plaintiffs compliance Vaccines Orders.

183. Defendants also intentionally failed to train and inform Plaintiffs of their OSH Act right to work remote or to receive safety equipment, like the PAPR, so that Plaintiff would not file complaints with OSHA and so that Defendants could continue to harass and coerce Plaintiffs to violate their religious practice of abstaining from taking the Covid-19 vaccine.

184. Defendant Allied200 and other Defendants act of either terminating or placing Plaintiffs on involuntary leave without pay and/or locking them out of their jobs because of Plaintiffs religious practice of abstaining from taking the Covid-19 vaccine was for the purpose is coercing and harassing

Plaintiffs to give up on their religious practices was extreme and outrageous conduct intentionally or with reckless indifference to Plaintiffs to right to practice their religious practice.

185. Defendant Allied200's act of denying Plaintiff Loiacono his unemployment benefits also amounts to intentional harassment and extreme and outrageous conduct in reckless disregard for Loiacon's right to refuse to take the illegal Covid-19 vaccine.

186. Defendants intentional harassment and discriminatory adverse action listed above have caused Plaintiffs severe emotional distress in violation of New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled "Unlawful Discriminatory Practices."

187. On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[9] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

> Employers must **not discriminate against** or **harass employees** with actual or perceived infection with COVID-19, or based ……..on the presumption that they …….are more likely to contract COVID-19 due to …..**religion** or another protected status. (See "Guidelines attached Exhibit 27)

188. Even after the City's Human Rights Commission issued the anti-harassment and discrimination guidance, Defendants failed to reinstate Plaintiffs and/or kept Plaintiffs on involuntary leave without pay, locked out and, and/or denied Plaintiffs unemployment benefits.

189. Under information and belief, Plaintiffs were not given the opportunity to engage in "Cooperative Dialogue" with the Defendants as required by CHRL §8-102, wherein the City made a "good faith" effort either in writing or oral dialogue to discuss with Plaintiffs the available rights to remote work or receive safety equipment pursuant to OSH Act standards.

190. Because the City's Vaccine Orders violated the OSH Act and all Defendants had a duty to provide either remote work or provide OSHA approved safety equipment to Plaintiffs so they could continue

[9] See all amendments to the CHRL at https://www1.nyc.gov/site/cchr/law/amendments.page

to work, the Defendants could not claim "undue hardship" as an excuse for failing to comply with the existing OSH Act standards as permitted under the NYCHRL.

## CLASS ALLEGATIONS

191. Plaintiffs realleges and incorporates by reference Paragraphs 1-167 of this Complaint as if fully set forth herein.

192. Class representative Plaintiff Loiacono, seeks class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of himself and all private sector employees who worked or works for employers within the City similarly situated (hereinafter the "Class")

193. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

194. The Class claims raise numerous common questions of fact or law, including, but not limited to:

   a. Whether the Vaccine Orders are preempted by the OSH Act because the Vaccine Order specifically violates the OSHA minimum standard for preventing exposure to airborne communicable diseases;

   b. Whether the wrongful discharge and/or lockout of Plaintiffs for refusing to take the Covid-19 vaccine based on religious and non-religious grounds violates the OSH Act, Title VII, the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

195. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy because there are no material issues of fact in dispute and only issues of law predominate the claims. There is no dispute that all Defendants terminated and/or locked out their respective Plaintiffs employees due to their unvaccinated status based on religious and/or non-religious grounds in violation of the OSH Act, or alternative in violation of Title VII and pursuant to the NYCHRL.

196. The claims of the named Plaintiff are typical of the claims of the class in that the named Plaintiffs and class members claim that their right refuse to comply with the Covid-19 Vaccine Order or Covid-19 vaccine mandated enforced by Defendants and subsequent termination or lock out of their jobs was willful or a reckless disregard for their rights protected by federal and constitutional law warrantying punitive damages against the Defendants jointly and severally.

197. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

198. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as class members and there is no need to a review of the individual facts or circumstances around each Plaintiffs job and the facts regarding each Plaintiffs termination or lock-out because the conclusions of law are determinative for each cause of action and not the facts surrounding the terminations or lockouts.

## **CLASS ALLEGATIONS**

11. Plaintiffs realleges and incorporates by reference Paragraphs 1-284 of this Fourth Amended Complaint as if fully set forth herein.

12. Class representative Plaintiffs, seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

13. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

14. The Class claims raise numerous common questions of fact or law, including, but not limited to:

15. Whether the Vaccine Orders are preempted by OSHA standards because the Vaccine Orders specifically targets City employees and not a larger public health goal;

16. Whether the Wrongful Discrimination of Plaintiffs for refusing to take the Covid-19 vaccine based on religious grounds violates the OSH Act, the First Amendment Free Exercise and Fourteen Amendment substantive Due Process liberty right pursuant to 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

17. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3). The common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

18. The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by City's reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards and subsequent denial of their right to exercise their religious practice of abstaining from the Covid-19 vaccine and keep their job in violation of the First Amendment and the New York City Human Rights Law.

19. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

20. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay due to their refusal to submit to the Vaccine Orders

## PRAYER FOR RELIEF

199. Declaratory judgement and prospective injunctive relief pursuant to 28 U.S.C. § 2201(a), declaring that:

   a. All Defendant employers, including but not limited, to private employers as well as the City are precluded from mandating immunizations/vaccines, including the Covid-19 vaccine, now and in the future, as a condition or pre-condition of employment or as condition for receiving employment benefits and all Defendants are enjoined from discharging or locking out any employee for refusing any immunization/vaccine, medical treatment or medical exam, including the Covid-19 vaccine pursuant to Section 20(a)(5) and Section 11(c)(1), so long as the refusal of any immunization/vaccine, medical treatment or medical exam is not a crime under state or federal law;

   b. all competent citizens have the right to choose their own medical treatment to reduce the risks associated with any communicable disease, including but not limited to the right to choose plant-based lifestyle medical treatments, herbal or plant-based or non-pharmacological medical intervention so long as the medical intervention is not a crime under state or federal law; and

c. declaration that the Vaccine Order is preempted and is void and all agreements obtained by a Defendant any Plaintiff employee related to the Vaccine Order or any Defendant's Covid-19 vaccine mandate, like employee waivers of their rights to backpay or compensatory damages are also void; and

d. pursuant to 29 U.S.C §669 Section 20(a)(5) all employees have an absolute right to obtain a religious exemption from an employer who requires any immunization, medical examination or medical treatment so long as the refusal does not violate any state or federal criminal law.

200. Injunctive relief ordering that the Defendants are barred from:

a. continuing to withhold compensation from Plaintiffs owed to them or which should have been paid to Plaintiffs since the date that each Plaintiff was placed on leave without pay until the day Plaintiffs return to work as ordered herein;

b. continuing to withhold or preventing Plaintiffs from receiving that portion of unemployment benefits paid by Plaintiffs that should have been paid to Plaintiffs while on leave of absence our locked out without pay;

c. withholding OSHA authorized safety precautions, including but not limited to "remote work" at home, safety engineering precautions like class room air purification systems, safety equipment like Powered Air Purifying Respirators (PAPR) or any other safety method authorized by the OSHA regulations to prevent employee exposure to airborne viral hazards in the workplace, if necessary; and

d. Defendants shall pay Plaintiffs all backpay owed from the date they were placed on leave without pay or locked out, to Plaintiffs counsel of record within 21 business days of any Court order to pay backpay.

201.   Pursuant to Plaintiffs OSH Acct Section 11(c)(2), claim, Section 1983 claims, 29 USC §185   and

New York City Human Rights Claims, Plaintiffs also seek damages in the form of:

a.  loss payments into any retirement fund and reinstatement of loss time into retirement calculation;

b.  expungement of discipline codes from each employee's personnel file and records;

c.  mental and emotional distress damages;

d.  punitive damages against Defendants and individual Defendants as appropriate an amount to

e.  interest on any compensation pursuant to applicable law;

f.  attorney fees and costs; and

g.  any other remedies allowed by law

Dated: January 18, 2025                                    Respectfully submitted,


/s/ *Tricia S. Lindsay, Esq.*
Law Office of
Tricia S. Lindsay, PC
 531 E. Lincoln Ave., Ste. 5B
 Mount Vernon, NY 10552

**Mailing Address:**
P.O. Box 88
White Plains, NY 10602
Phone: (347) 386-4604
            (347) 349-5433
Email: Tricialindsaylaw@gmail.com
            attorney@tricialindsaylaw.com
www.tricialindsaylaw.com